When you're ready, good morning, your honors and may it please the court. My name is Elizabeth Daly. I'm here representing Michael Allen the petitioner in this case and with the court's permission. I'll reserve 2 minutes of my time for rebuttal. This case, let's can we just jump right to it because we have you're here in a 2241 right and so we're looking to establish actual innocence. Yes, your honor. Your honor, our case of, let me see how you pronounce this exactly, I don't want to get it wrong, but Marrero seems to be problematic for you and so my question is if we were to say that Marrero doesn't allow for you to claim actual innocence on this, is there a remedy for your client in terms of if he got a second and successive COA? No, your honor, there's no remedy under a second or successive COA here, but I'd like if I can to tell you the reasons why I don't think Marrero controls. Why not? So the first precedent that the court should consider or principle is that precedent has to be construed in light of the facts before the court and Marrero addressed a distinguishable type of error and in fact it favorably cited Second Circuit law in Poindexter versus Nash that would have distinguished the type of error we're raising. But it seems like as much as I can ascertain that at the time that this happened, your client had those priors, he's the one that had them and so he was a career offender, but then the law changed and so now he's arguing that he wouldn't be a career offender. So he's not actually innocent of those priors, it's a legal matter of whether those priors can qualify under the law as it's changed, right? No, I disagree with that characterization because a legal change can happen outside of the real world. It can happen only in the law books. That's what happened in Alamalo. I think the distinction that you're, so in Alamalo was the case where the definition of importation of drugs changed in the law books. Nothing about what the petitioner in Alamalo had done changed, but the new legal standard was not something that the facts satisfied and that is what we have here. That's why it's a claim of factual innocence. I think that the two sort of analytical hurdles that we're dealing with are a distinction between facts that go to the offense conduct as opposed to sentencing and I think that Geosis tells us that that distinction is not enough to say this is not a claim of actual innocence. Geosis tells us that facts related to sentencing are facts that have to be found by the sentencing court and that really they should be treated the same as facts going to the offense of conviction. That corresponds with the post-Morero precedent in the Supreme Court's Alleen decision where they talked about facts that increase both ends of the sentencing spectrum are relevant to the legality of the sentence. The other analytical, I think, difficult, I'm sorry, Your Honor. No, please go ahead. I'm sorry. Analytical sort of difficulty we have, we've got the sentencing factors versus offense conduct distinction, but also the fact that it's not anything changing in the real world. In Johnson, the Supreme Court case from 2005, there was a prior career offender conviction that actually had been vacated in the lower courts. Now, that was not an innocence issue because it was vacated for legal reasons, but where there had been that outside change, the Supreme Court said this is a miscarriage of justice. That's consistent with this court's precedent in Reyna Rodriguez that it's not merely a procedural problem when you have a substantive change. Are there people out there that are getting 2255 relief after? Had this been raised in a first 2255 motion, then it would have been cognizable. The timing of the Supreme Court precedent precluded that, and that, I think, is why we meet the unobstructed procedural shot test. Are there other people out there, to follow up on Judge Callahan's question, that have done this, not had a 2255 available to them and come back, oh, and 2241 under these circumstances? Not in this circuit. In the Fourth Circuit, the Sixth Circuit, and the Seventh Circuit, this type of sentencing innocence claim has been successfully heard. And you're just referring to the cases that you've already cited? Yes. There's nothing new or different? Okay. No, the only change I submitted in my 28J was that the Wheeler cert petition was denied. Let me make sure I understand your argument. It is that he's got these two priors. He doesn't challenge the fact of those convictions. Those are valid convictions. Yes. But what he says is, under de camp, because he pled, and because the offense of which he was convicted is so broadly defined, it's entirely possible that what he did and what he pled to is not covered as a crime that's cognizable under the career offender, and therefore he's innocent. That's the argument? That's close to it. I would just make a minor distinction that because of the nature of the career offender designation, the question is, does he have a qualifying conviction? And the offense conduct is irrelevant. He's innocent if his conviction doesn't qualify. And that's where I think it gets to be sort of three-dimensional chess, because it's not as though Mathis or de camp, we've been told repeatedly it didn't tell us anything new, that those cases yet. You can look at a whole lot of case law that tells you that's not how the circuits were applying. And in fact, in this case, you would know that had he actually raised this challenge, this overly broad and indivisible sort of challenge, it would not have been successful. Ten years later, one of these priors was deemed qualifying in an analysis that didn't even mention divisibility. I'm sorry, what are you referring to? And so that seems to me to be very problematic for us, because those cases didn't really announce a change. So there's a Teague new rule analysis that has been held that de camp and Mathis did not announce new rules, and particularly new rules of constitutional law. That is different from the unobstructed procedural shot test. And in Alamalo... Right. And so tell me how that helps you. Go right there, if you would. That might help me. So the unobstructed procedural shot test asks, as I construed in Alamalo, you're looking at was there a difference between the circuit precedent at the time that these claims could have been procedurally raised in a direct appeal or a first 2255 motion, and what happened with the intervening precedent. And so the intervening precedent, even though it derived from Taylor, Taylor had been wrongly construed in the Second Circuit, and the Second Circuit has admitted that. Was it consistently applied? Were they doing it a consistent way? Because we weren't. Yes, I found published precedent in 1995, 1999, 2005, 2008. So have I, but was it consistent? Or is there other published precedent where the Second Circuit was doing it differently? That's what I'm asking you. Not that's been cited by the government and not that I have been able to find in my review of Second Circuit law. That answers my question. Okay. And in Alamalo, they said we don't want to this. This derives from the text of the Savings Clause, which doesn't say no prior procedural opportunity at all. It's not a could have or should have. It's was there a change in the prior precedent? So he got a left. The district court that sentenced him at the time gave him less than he could have gotten. Right. No, Your Honor. I think that was a mistake in the government's brief that the government will address. He got the low end of the mandatory career offender guideline, the lowest sentence he could have gotten. The judge found no legal availability of departures. Okay, but he got the low end. Could you if let's just say if if you get a shot at this, he could get less of a of a sentence. Yes. Today, not only would the guideline be the guideline, then would have been 27 months lower. The guideline today would be decades lower because of the changes to crack cocaine guidelines that Congress and the commission intended to apply to people like Mr. Allen. But he wasn't able to get the benefit of them because of this error. And I just wanted to briefly say that it was lawful under circuit law at the time. But now that we know how Taylor should have been construed, it was an unlawful sentence at that time because the precedent is retroactive, if that makes sense. And with the court's permission, I'll reserve my time. Let's hear from the other side. And then you do have some time. Good morning. May it please the court. Amy Potter, on behalf of the United States. This circuit has held that in order to establish a 2241, you need to establish actual innocence and an unobstructed procedural shot. So if you say that, given that the Supreme Court issued its decision in Mathis and DeKalb after Allen's opportunity for a 2255 review passed, how can you support your argument that he had an unobstructed shot at presenting the claim? I think the answer is to look at the case law. And when you look at both Beardsley and Baker, the Second Circuit cases that are cited in the brief and then in the 28J, in Baker, they talk about Beardsley as actually being correct and being affirmed by discounts. And then in Beardsley, there's a footnote, footnote number 12, which talks about how you shouldn't look at the conduct underlying the case. Now, that footnote seems inconsistent. I agree with some of the other Second Circuit cases. And I want to be very clear, I've never practiced in the Second Circuit. It's not my area of expertise. Neither have we. Okay. I would hate to have another circuit analyze our case law. This was a very confusing area. I don't mean any disrespect, but I am struggling with what would really have happened if this argument had been made at the time. And it seems to me it would have been pretty futile. Well, but his 2250. I can't disagree, Your Honor. I appreciate that. Would the 2255 have to be in the Second Circuit? His 2255 would have to be in the Second Circuit, and it is my understanding based on all the case law that he would not get permission to file a second or successive. His only way to avoid the procedural bars of the 2255 is to file the 2241, which he has now done because at the time he filed, he was at Sheridan, the institution of Sheridan. And that's part of the problem here, which is why 2241s have been so limited, because as troubling as it can be, and I understand, I know this Court has reviewed the record, I understand that you know Mr. Allen has done incredibly well, and he served a very long sentence, one that many of us would probably agree he wouldn't serve today. I mean, there's really very little doubt. I don't think there's any way he could serve it today. He wouldn't give it to them today. But okay, okay, you could be actually innocent. I can go, you could be actually innocent, let's say, and I've seen this happen. All right, there's a lot of defendants out there that have a ton of records, and they've been doing life on the installment plan. So there could be someone that could say, okay, yes, I have those priors, and then later it turns out that he admitted a prior that really wasn't him, and now we know that it's really not him. Now, would you concede that he would be factually innocent if that were the case? If he could show that, say, hey, that wasn't really me. I admitted a prior that, and it's not me. Would that be factual innocence under 2241? Yes, he would be factually innocent of the underlying conviction, and that's the issue here. He is, the fact of the conviction remains. What has changed is the legal analysis of the impact of that conviction on the guidelines. It's tough to say somebody doesn't have an unobstructed procedural shot if he admits to a prior that doesn't really qualify. It seems to be a different problem there. In this case, I looked around to see about these two priors, and I found a case. I could probably pull it up for you. This sentencing was 1998. There's a 2008 case where one of these precise priors was treated as a qualifying prior in an analysis that said it's overly broad. There's no discussion of whether it was divisible or not, and then there's a discussion of the facts of the case, and they decide that's a qualifying prior. And you could find ninth circuit cases law that does the same thing. So, again, no disparagement intended, but I don't think there's any way this qualified. If we just take that as a hypothetical even, just as a given for purposes of discussion, then how do we say he had an unobstructed shot? Well, Your Honor, I would go back to he could have raised it, but I think the better argument is that he's not actually innocent. Under this court's test, and in Stevens v. Herrera, this court said, we adopt the Bowsley test, which is could a jury have convicted you of the crimes? And both his prior convictions and the count of conviction in the federal case, he's still guilty of those crimes. It's a legal analysis. Is there – would you concede that even – let's just say if we said he could go – if he could get through the 2241, in your view, are – do they qualify? Is he obviously not a career offender now? Your Honor, that is not part of the certified question, and I would prefer to be able to consult with Connecticut. I understand that given the limited amount of time Mr. Allen has left to serve, if he were to get through the gate, I think it would be resolved in Oregon, but typically they would then be sent back to the district, and it would be up to the Connecticut district court to determine if he qualified at that point. I think – I can certainly acknowledge to the court that there's a lot of debate right now in the Second Circuit, and I believe there are district court cases where the U.S. Attorney's Office in Connecticut has certainly lost this argument, but I don't understand that at this point they're conceding this argument. And I apologize, it can't be more specific, but it was not briefed. And so in the Second Circuit, they would never grant a second and successive habeas here? No, it would not qualify because it's not a constitutional error. It wouldn't fit under the rules for a second or successive. And he also couldn't get a 2241 in the Second Circuit because the Second Circuit adopts the same test we have here and has said that sentencing guideline errors are not cognizable under 2241. Let me run this past you, not with respect to unobstructed shot, but rather innocence. If someone is innocent of the prior conviction, is that innocence under 2241 for purposes of career offender sentencing? I believe in that, Your Honor, I'm having trouble. There is a case, the Supreme Court, when someone vacated a prior conviction, he was found to be eligible to be resentenced. But I apologize at this moment that I cannot. But he would be actually innocent. He would be actually innocent of the underlying conviction, yes. Well, but I'm saying he's innocent not of the crime of conviction, but he's innocent of one of the priors. And so he's innocent of the sentencing, not innocent of the crime of conviction. So is that cognizable under 2241? If we have just a, it was a mistake. The DNA evidence shows that, you know what, he didn't do it. Is that an incognizable under 2241 because there was a, because it was used for sentencing for a career offender? I believe, certainly this Court left that possibility open in Marrero, and I believe there are many courts that have recognized if it is vacated so that he's no longer. I want to start out with the reason he's clearly innocent. We know he's innocent of one of the priors. I believe this Court would recognize that as being actually innocent. So my next question is, does the following count as innocent? He pleads to a crime. It's a valid plea. But we learn later when we do a de camp analysis that the crime of conviction to which he pled is overly broad. And some of the conduct for which he might or might not have been guilty would qualify under the career offender statute, but some of it would not. In other words, it's overly broad, and under de camp, we cannot know that he pled to something that would qualify for a career offender or something that would not qualify. Is that innocence? My position would be no, Your Honor, that he is still guilty of the underlying statutory crime of conviction. But I'm not interested in that. I'm interested in the prior of which he is a conviction. And whether that qualifies. He's still guilty of the underlying crime, the fact that the analysis has changed as to whether it in fact qualifies or not. But now we don't know what he did. And some of the things he might have done and for which he might have been convicted would not qualify under the career offender. That still doesn't qualify as innocence. Do you go to whether it qualifies if he's under the conviction of what the prior is? I mean, like I said, if it wasn't really him or if he, you know, or he wasn't really guilty, you know, for any reason, that would be innocence. But this is a legal question. Yes, so my distinction would be he, and let's just say it's Connecticut drug distribution. He's pled guilty to Connecticut drug distribution. He remains convicted of Connecticut drug distribution. But now today we look at it and say Connecticut drug distribution covers a range of things that aren't under the Controlled Substances Act. He remains convicted. So that fact of that conviction remains. What has changed is the legal analysis of how we evaluate that for purposes of career offender. And my position is that under Marrero, that does not constitute actual innocence. Does Marrero tell us that or is that just your inference from Marrero? No, I believe Marrero tells us that, that you cannot be actually innocent of a career offender guideline. And then Marrero sets out three exceptions, which he does not qualify for. One of the qualifying or the exceptions of Marrero is that he wasn't guilty of the underlying conviction. The other is that he received a sentence that he's not statutory. That's what bothers me because we don't know whether he was guilty of something that would qualify as a prior under the Career Offender Act because he pled to something that's much broader than just those, that conduct. Your Honor, and I acknowledge that we may not, he may not be a career offender anymore, but I think the question under Marrero is did he, is he guilty of the actual, is he guilty of a crime? The Connecticut Drug District. Well, the second exception, am I looking at the wrong page of Marrero? The second exception is some courts have suggested that a petitioner may qualify for the skate patch if he received a sentence for which he was statutorily ineligible. Yes, and Your Honor, the statutory maximum here was life. So our position is that he is sentenced. Well, but now this 16th and 7th Circuit would allow for this, right? I agree with you. But you're saying the 9th doesn't because of Marrero. The 9th does not, the 2nd, the 11th, the 3rd, and the 5th do not, the 6th, 7th, and 4th would allow it. There's a circuit split on this issue. And to date, the 9th Circuit has continued all in unpublished decisions to hold to the Marrero line of reasoning. Well, can I go back to Marrero? I'm going to keep just pressing on here with Marrero. That's fine. So go to the, we'll just do them one by one if we would. Okay. The first exception, some courts have held that a petitioner may be actually innocent of a sentencing enhancement if he was factually innocent of the crime that served as the predicate conviction for the enhancement. And you're reading that very narrowly, but going back to Judge, is that your best, have you given us the best answer you can give us to the, what if he's, what he's actually convicted of? And this is italicized factually innocent of something that falls outside, you know, that is overly broad. It doesn't say factually with italicized. I may have given you the best answer I can, which is that he remains convicted of a Connecticut drug distribution charge. And I want to. It doesn't say legally innocent. It says factually innocent with that italicized. And that's why I'm concerned about this overly broad. We're going to come to the second exception in a minute. Right. And I understand. Maybe you've given the best answer, but this bothers me a lot. I'm not so sure you're correct. Your position is that I should read legally. It's a legal question. Does the Connecticut conviction he pled guilty to qualifies a career offender? To me, that is a legal question. And that's how it's been treated in the past, with the exception of the sixth, seventh, and fourth circuits. And as a result, he remains a career, or he remains ineligible for 2241 because he cannot establish actual innocence. Okay. So I make nothing of this. I'm sorry. Forgive me. So you want me to just, even though it says factually innocent and it's italicized, I should not give credit to that or not? You think I'm reading too much into that? I think the reading, the government's position, the reading is that factual innocence goes to is he convicted of the crime or not, was the crime vacated or not. Okay. So you're reading it as legally innocent. I'm saying the fact that the conviction remains and the question of whether he's a career offender is a legal argument. And Marrero says, I'm sorry, I'm not answering it. I apologize. You have answered it. And I'm taking up too much of your time, and I'm not even going to ask you about the second or third exceptions. You should go to Judge Callahan's question. Okay. Well, I just wanted, this is just a practical thing. All right. So how much of his sentence has he served? Now you said. He only has six months left, Your Honor. Out of 300 and how many, 30 something? 162. I apologize. I'm having a, yes. I mean, he's served an incredibly long sentence. I acknowledge that. It's not always easy to come here and do these cases. No, I'm just trying to, you know, I'm looking at it from a practical backdrop and that obviously I have to consider whether, you know, why if we're writing on a clean slate or what Marrero says, and which this court could, if I felt that I was bound by Marrero, we could on bonk say otherwise and consistent with the other circuits, or the Supreme Court could tell us what the answer is. But it sounds like at this point whatever would happen with him isn't going to, I mean, not to say that any day doesn't make a difference. You know, we would all rather not be out any day. Well, it may shorten his supervised release. There's no argument that it would be moot. I don't think it would be moot for precisely that reason. How many people would this affect potentially? Your Honor, I don't have all the current stats. I will say in the Gilbert case, which is the 11th Circuit case, they said between 1991 and 2004, 16,000 people were convicted of being career offenders. Now, that doesn't mean they're all wrong. And, you know, we could do the math of how many of them are still in custody. I would say I think it's a lot. And some would have 2255s available, or of that number none of them would have 2255s? Not at this point. Well, no, they would not have 2255s for this issue. There's not a circuit. Mathis is not cognizable on a second or successive 2255. So I don't believe that any of them. But if they'd never had a 2255, there could be some people out there, right? Or would they all have already had it or time barred? They'd be time barred. And let me be clear, 91 to 2004 is the mandatory guideline provision. So that has nothing to do with people who were discretionary guidelines, but the court still found them to be career offender and sentenced them as career offender. I have no knowledge of the number of that. I can happily find it if the court would like. Well, I will try to find it. When I talk about this argument, I am talking about Mathis and DeCamp and not a constitutional issue. Yes. So it's not going to be they're not going to be eligible, right? No, they're not going to be eligible. Okay. This sounds like this is eventually going to go to the Supreme Court. We could probably accelerate that process by holding against you. He's kidding. He's kidding. I would not. I do not recommend that. But I do think I, you know, certainly I think both Ms. Daly and I would have preferred that they grant certain Wheeler and simply resolve this issue one way or the other because there are plenty of these cases percolating in the district court, the courts aware of the Green case. This is not a one-off. So even with respect to the defendant here or the petitioner here, even though for him it's only six months, there are a lot of other people out there on the pipeline. Yes. And I would assume a fair number of them are in the Ninth Circuit given the number of prisons and, frankly, the security level of the prisons. I think that's true. This is not either way this Court decides it's likely not to resolve this issue overall. These cases will continue to arise. Thank you. I'm way over my time. Thank you very much. Thank you for your help on this. Would you put two minutes on the clock, please? Thank you. On that last point, Mr. Allen does only have six months left on this sentence. He does potentially have a claim against his supervised release. He's many times mentioned to me that he doesn't like that he was qualified as a career offender, classified as a career offender, and the stigma attached to that. This issue won't go away. Even though this particular case is a mandatory guidelines, similar sentencing innocence claims arise under drug quantity findings, prior felony drug offenses for mandatory minimum increases in the Armed Career Criminal Act. I want to talk about how I view Marrero's definition of actual innocence. In that case, the alleged error was that the commission had passed a non-retroactive amendment about how prior convictions are counted. The convictions were conceitedly controlled substance offenses. There was conceitedly more than one. But they said, as a legal matter, they shouldn't count as more than one. And they said that that's a purely legal claim and not one of factual innocence. The reason I'm raising this is because the same argument was denied in Poindexter v. Nash, the Second Circuit case that the government has cited. In Poindexter v. Nash, they said this isn't a claim of actual innocence because, among other reasons, he's not saying that his priors weren't controlled substance offenses. So I think we can read Marrero as saying the exception in Poindexter v. Nash is also something that we would acknowledge. Your Honor is shaking your head. I'm just listening. Okay. It's a complicated area, but I think, Judge Kristen, you had an interesting analysis of the exceptions that are put out in Marrero. But those exceptions are actually dicta. They're not describing a full analysis. Is that your best response to them? Because I was going to go through one by one. I've gone through. You're both so well prepared, and I really want to say that I appreciate it. This is a very serious issue, so thank you both. I was going to walk through all three. I'm not sure you got to hear my analysis of those exceptions. But is your response that they're dicta and we don't need to be constrained there? Or what is your response? My response is that the government's describing them as though Marrero said these are the only claims that could be cognizable. Not limited as you're correct. Correct. Yeah. Okay. And I think that your claim on the factual innocence of the prior, your explication of that exception would be completely accurate. I'm out of time, but I'll finish up. I also think that this is a sentence that he was not statutorily eligible for the reasons that we cited in our briefing about Booker versus United States, which said that the guidelines cannot be construed as merely recommending sentences. They required sentences. Okay, thank you. And it is constitutional error under the due process clause. Thank you. Thank you. I would like to reiterate what Judge Kristen said, and I'm sure Judge Callahan feels the same way. She both did an excellent job. It's a pleasure to have such good arguments. Thank both of you. Yeah. Allen versus Ives submitted.
judges: W. Fletcher, Callahan, Christen